MILLER v. PRICE.

DEED—MORTGAGE—BURDEN OF PROOF.—Under the facts in this case, the deed absolute on its face is adjudged to be what it purports and not a mortgage. Burden of proof in such cases stated.

Before TOWNSEND, J., Charleston, March, 1902. Reversed.

Action by Sarah Ellen Miller against Thomas J. Price. From decree in favor of plaintiff, defendant appeals.

*Mr. W. M. Fitch,* for appellant, cites: 19 S. E., 307 ; 29 S. E., 408 ; 32 S. E., 310 ; 64 S. C., 177.

*Mr. Simeon Hyde,* contra, cites: *As to finding of facts on appeal:* 40 S. E., 895 ; 31 S. C., 276.

April 20, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. *Statement of facts.*—This is an action to have a deed of conveyance declared to be a mortgage and intended as a security for certain sums of money borrowed by the plaintiff. The master in his report thus states the issues raised by the pleadings:

"The plaintiff alleges that previous to the 31st day of July, 1900, she being indebted to the defendant in the sum of $78, applied to him for another loan of $100, which amount the defendant agreed to lend her, upon condition that the plaintiff would secure him by a conveyance of the property. That she agreed to do so, and thereupon the defendant 'loaned and advanced' to the plaintiff the said sum of $100, and presented to her for her signature a deed of conveyance of the said property, which, in order to carry out on her part the said agreement, she executed and delivered to him. The conveyance covered a lot of land on Kracke street, and two lots on Norman street and Ashton Court, described in the second paragraph of the complaint. The consideration named in the deed was $200. The deed was properly executed and delivered on 30th July, 1900, and was duly recorded on 31st July, 1900. That the said deed was executed and delivered to the defendant merely as security for the repayment of the said debt of $178, with the interest thereon, and the expense of preparing and recording the deed, 'and was to be and become, as was then and there agreed by and between the plaintiff and defendant, void and of no effect whatsoever, upon the repayment of the said sum so therein named of $200.'

"The plaintiff further alleges that she is an ignorant woman, and at the time of the execution of the said deed was sick in bed, and that the defendant is a real estate broker in the city of Charleston, and is a man of experience in the said business. That the defendant had been for some time the agent of plaintiff's father, who, in his lifetime, was the owner of the property; and since her father's death has been the agent of plaintiff, having charge of the said real estate for her, for the purpose of rent or sale, and that because of those

peculiar relations of trust and confidence, she was induced to convey the said property to him as security as aforesaid. That the value of the said real estate is upward of $1,100, and the debt due by plaintiff to defendant did not at any time exceed $200. That since the conveyance to him, the defendant has sold one of the pieces of property referred to, viz: the lot on Kracke street, to one John C. Beard, trustee, for $300; and thus the debt of plaintiff has been paid in full, and there is now in the defendant's hands the overplus of $100, to which plaintiff is entitled. The plaintiff has applied to the defendant for a reconveyance to her of the remainder of the said real estate, which demand defendant has refused.

"The answer of the defendant denies all the allegations of the complaint, except that the conveyance referred to was made and delivered to him, and that he is by profession a real estate broker, and that the said real estate had been in his hands as the agent for the plaintiff, which said allegations he admits. For a further defense he alleges that on or before the 21st of March, 1900, the plaintiff was indebted to him in various sums, amounting to $80, and to secure the said indebtedness, made and delivered to him her bond and mortgage in the penal sum of $160, dated 21st March, 1900, covering the property described in complaint. That thereafter, to wit: from the 21st March, 1900, to on or about the 30th July, 1900, the plaintiff became indebted to the defendant in various other sums, for various causes, and 'upon her request, and with her consent, she agreed, upon the payment of $100, in addition to the amount secured by the bond and mortgage, and the various items of indebtedness due by her to the said T. J. Price, to sell and convey the property described in the complaint in fee simple to the said T. J. Price, as at that price the property was in very bad repair, yielding no rent, and not self-sustaining, and she did not have the money to repair the same and make it self-sustaining; and after the negotiations had between the plaintiff and defendant, he accepted the wishes and desires of the said plaintiff,

and paid over to her, upon the execution of the deed mentioned in the complaint, the sum of $100 in cash, and then took a conveyance in fee simple from the paintiff' to himself, dated 30th July, 1900, the consideration in said conveyance being for convenience stated at $200; which conveyance was duly recorded. And the defendant alleges that there was no agreement whatsoever of any kind made or agreed to between him and the plaintiff, except that the property was to be sold to him without any reservation whatsoever, for the consideration as above stated; and that he holds such of the said property as is now in his possession as a purchaser for valuable consideration in fee simple.".

After stating his findings of fact, the master concludes his report as follows:

"I do not think it necessary to encumber this report by going into a detailed analysis of the testimony. It is sufficient to say that I am satisfied that there was no such agreement between the parties as that set up by the plaintiff, namely, that this conveyance should stand simply as a security for money lent to plaintiff, and should become void, of no effect, upon the repayment to the defendant of the amounts so advanced. The transaction between the parties was, on the side of the defendant, entirely open and above board. The instrument itself is in terms an absolute conveyance. One of the subscribing witnesses to the deed testifies that it was read over to the plaintiff two or three times, and she signed it willingly, and without any compulsion or undue persuasion. The plaintiff is a colored woman, but of fair average intelligence, and it is not even pretended that she thought the paper she signed was any thing but an absolute deed. Her contention is, that she meant it to be only a security. Possibly so; but there is nothing in the testimony that persuades me that she conveyed that idea or intention to the defendant, or that he received the deed with any such understanding. On the contrary, he at once proceeded to treat the property as his own, and to exercise rights of ownership over it. Persons who do solemn acts must abide

the results of those acts, and not expect courts to relieve
them from the consequences of their own indiscretion. Un-
doubtedly there are cases where courts will declare an instru-
ment, on its face an absolute deed, to be in intent and actually
a mortgage; just as there are cases where a deed will be set
aside for fraud, for glaring inadequacy of price, or for undue
advantage taken of one of the parties by a person who bears
a fiduciary relation to that party. But I do not find any of
these elements in this case. The price given was compara-
tively small, but property at the time was extremely de-
pressed; and though a larger price might eventually have
been obtained, yet that would have taken time and much
effort, and the plaintiff's need for the money was immediate.
No fraud, nor indue influence, nor improper concealment
has been proved against the defendant. The cases of
*Hall* v. *Hall,* 41 S. C., 163; *Petty* v. *Petty,* 52 S. C., 54,
and *Shiver* v. *Arthur,* 54 S. C., 184, relied upon by defend-
ant's counsel, seem conclusive of this case; but, independently
of the authority of decided cases, it is clear to me, under the
facts of this case, and the general principles of law, that the
relief sought for in the complaint must be denied, and I so
find and report as matter of law. I recommend that the
complaint be dismissed, with costs."

On hearing the exceptions, this report was reversed by the
Circuit Court and the defendant has appealed to this Court.

*Opinion.*—The practical question presented by the excep-
tions is whether his Honor, the Circuit Judge, erred in his
finding, that the deed of conveyance, although absolute on its
face, was intended as a mortgage. The rule of law appli-
cable to this case is thus stated in *Shiver* v. *Arthur,* 54 S. C.,
184, 32 S. E., 310: "In order to settle the practice as to the
burden of proof in such cases, the Court takes occasion
to state it as follows: 1. An instrument of writing is what
upon its face it purports to be. 2. The complaint must
contain the necessary allegation that the deed though abso-
lute on its face was intended as a mortgage. 3. These
allegations must be sustained by testimony *prima facie* show-

ing that they are true. When this is done, it removes the presumption arising from the fact that a paper is presumed to be what its face imports. 4. When this is done, it is incumbent on the mortgagee to remove the inference that may be drawn from such *prima facie* showing. ·This is sometimes spoken of as a burden of proof, but it is simply making it incumbent on the mortgagee to disprove the case as then made."

The complaint does not allege fraud, undue influence or concealment of facts on the part of the defendant. Nor was there any testimony showing an agreement by the grantee to reconvey the property to the plaintiff. The master in his report finds that "at the time of the transaction between the parties, the houses on the lots were in very bad repair, and had been for a long time without tenants. The defendant had endeavored to sell them without success. It may be fairly concluded that in the condition of the premises, in July, 1900, these lots were very undesirable property for any one who did not have the money to put the buildings in tenantable order and to keep down the taxes.

When the defendant paid to the plaintiff the balance of the $100, she executed the following receipt: "Received, Charleston, S. C., July 31st, 1900, from Thomas J. Price, ninety-five 00-100 dollars bal—in full of all demands to date for property Ashton and Kracke streets. $95.00. Sarah Ellen Smith."

The plaintiff wanted the $100, because she was soon to be married. The plaintiff secured the former loans to her by the defendant by a mortage of the property, and it is but reasonable to suppose that she would have executed another mortgage if the $100 was intended merely as a loan. The testimony impresses us that the plaintiff intended to *sell* the property to the defendant, but afterwards became dissatisfied with the transaction.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.